May it please the Court. My name is Matt Gauger. I happen to be one of David Rosenfeld's partners and I represent SEIU Local 1-1 RN. SEIU Local 1-1 RN represents nurses in Southern California. I think it's important for the Court to understand that the leaflet was distributed in the middle of a very heated labor dispute. There were two strikes. There was a decertification election. There was another strike planned. The bargaining unit is huge, a thousand nurses, and among those, the record indicates between 50 and 100 stopped dues, stopped paying dues, and between 30 and 50 gave up their union membership. Is this all in the record? Yes. It's at the excerpts of record 2 at page 114. I believe it's Ms. Weinstein's testimony. Ms. Weinstein is an RN who is the head of the union. It was that, it was in that context that this flyer was sent out. And the issue that the union has is speech in a labor dispute is normally left alone by the NLRB for good reasons. Here, the NLRB didn't follow its usual approach, its usual standards. If the statement was a deliberate or reckless untruth under Limvey-Platt guards, then the board can pursue it under Section 8b-1. Or if it's coercive, then the board can pursue it. But all of the cases that both sides cite, every single case where it finds coercion arising from something to do with a union threat, it's always a direct and explicit threat. The union in every single one of the cases says, threatens termination and refers to the union security clause. So deception is not enough. It's got to be intentional coercion. There's two standards. You can meet either one. It's got to be intentionally, recklessly disregarding. It's got to be an untruth. That's one standard. The other one is, if it's a threat, it's coercive, and then it's also a violation of 8b-1. Well, if I understand this, and I may not, but I thought that what this flyer said was that if you don't pay your dues, we'll come after you and collect them. It says that. And it says other things as well. Now, the relationship of the individual. It's not a threat and it's not coercive. No. Because? Because a person continues their dues obligation until they resign from the union. In a circumstance where there is no collective bargaining order. Even if there's no contract? Even if there's no contract. The law is that you have to continue to pay your dues until you resign. The union could go after the person under Section 301 of the National Labor Relations Act, which is 29 U.S.C. 185, or it could use internal union processes to do that. If the person says, I'm sorry, I tender my resignation, then the union can't collect dues. You made a statement to counsel that I think is very significant. You say that the dues obligation of a member of a union continues even though the union has not delivered a contract under which the person is working. And do you have a case that holds that? Off the top of my head, no. I don't wonder. No, no. It's the structure of the relationship of the union to the individual and the union to the employer. The collective bargaining agreement expired in this case. The parties extended it. Then they let it expire and the union conducted two strikes and was preparing for a third. During that whole time, out of 1,000 people, at least 900 maintained their membership and continue to pay dues. So what you're saying is there are two contracts here. One is the membership contract where a person becomes a member of your union and he or she agrees to pay dues, irrespective of whether the union is able to deliver as a collective bargaining agent a collective bargaining agreement. That and so therefore, as Judge Schroeder put it, if you don't pay, we'll come after you and collect the dues is perfectly okay, because all they're doing is saying we're going to enforce our contract with you, Mr. Member or Ms. Member. It's not a contract, but other than that, yes. It's a membership. It's like joining the Sierra Club. Well, you can quit any time you want to. And if they can quit any time they want to, why can't they quit by not paying dues? They can quit during the ñ when there's no union security clause, when there's no collective bargaining agreement. Can't they quit by conduct or do they have to write a letter and say, I quit? They have to resign. Not paying dues doesn't necessarily cause a person ñ Is there a case that says that? The ñ I'm sorry. Is there a case that says they have to resign? No, no, no. There are ñ There are cases they can't resign by simply not paying dues when there's no contract with the employer. There are cases under LMRDA that describe the relationship between the union and the individual, and each union has its own bylaws, and the bylaws can regulate how you join the union. The United Auto Workers case that we supplementally provided you is a discussion about the Beck case, which talks about when a person can say, I want to be a dues ñ I want to be a fee payer rather than a member of the union. That's during the pendency of a collective bargaining agreement. During ñ when there's no collective bargaining agreement, the courts have and the law allows the union to regulate how you quit. If somebody writes a resignation and says, I resign, they quit. Here, the record is ñ How about if they say, I don't pay ñ I don't want to pay dues? It depends on the ñ it depends on the circumstances of that union's bylaws. And what ñ do we have in your ñ in the record a ñ something in writing which shows that under SEIU, if you don't write or call up to say, I want to stop being a member of the union, you must keep paying dues even if the union hasn't ñ a collective bargaining agreement? Is there something there? The only thing that's in the record is the statement, which is completely nondisputed, that out of 1,000 people, only between 50 and 30 tendered their resignations and only between 50 and 100 stopped paying dues. How does that establish the obligation of those 30 or 50? It doesn't establish an obligation. It describes how they dealt with their obligation. Well, that may ñ I don't know how that may mean that you were fairly coercive. What I'm not understanding is the board said the ñ framed the issue as whether the Respondent Union restrained or coerced employees in violation of the Act by, among other things, threatening employees with adverse consequences if they failed to continue to pay dues and fees under an expired union security clause. And the holding was, we find that a flyer circulated by the Respondent during success of contract negotiations violated the Act. And then they say the question is whether the flyer reasonably tended to restrain or coerce employees in the exercise of their Section 7 rights, which include the right to refrain from paying union dues or fees when there is no contractual obligation to do so. Now, why is that wrong? The reason it's wrong is because the statement the union made, the leaflet, isn't coercive under the board's law. All of the cases that both sides cite, there isn't a single case that doesn't have a direct threat. You can't make an implied coercive threat under these cases. I don't understand. If you say we're going to go after you to pay these dues that they don't really have to pay, what's – why is that not coercive? For two reasons. One is that it never says we're going to make – we're going to see that you're fired. It just says you – I have an obligation to continue paying your dues. We may ask you to comply with that obligation. That – there's no case that says that's coercive because it doesn't refer to the union's security clause, which, if it existed, the union could seek discharge of somebody who didn't pay their dues or fees.  It doesn't exist. Kagan. So it would only be coercive if they said we're going to see that you get fired. Right. Or a physical threat. And that's – there's no claim of that. I would like to reserve. Thank you. Judge Schroeder, and may it please the Court. My name is William DuRoss, and I'm appearing on behalf of Ms. Battasher, the charging party and the Petitioner in this case. I would like to reserve a minute or so of rebuttal if I could. This is a case about two leaflets. One that you've been hearing about is the coercive threat to collect dues under an expired collective bargaining agreement. If I may, I'd like to address the second leaflet, which threatens employees with civil fines and criminal prosecution for what's called strikebreaking. This – these were two separate and distinct charges that were filed by Ms. Battasher and they were prosecuted by the General Counsel for the National Labor Relations Board as two separate complaints. They were litigated before the administrative law judge as two separate complaints. And both the General Counsel and Ms. Battasher alleged that the strikebreaker statutes, Your Honors, violated the Constitution of the United States under the preemption doctrine because it penalized protected activities. Let me ask you a question that goes right to what bothers me. Yes, Judge Breyer. Ms. Batchelder did not file a motion for reconsideration under the NLRB under Section 29 U.S.C. 160d. Doesn't that bar her claim here? No, Your Honor. Then why? What we have here is an aggrieved party who was denied a remedy on a separate charge. That is the substantive issue in this case, which was presented to the Board at every – at every juncture. Is your position that a petition for reconsideration is not a necessary exhaustion of administrative remedies? Not in this case, nor under the Board's rules, Your Honor, because the Board's rules say that you're not supposed to file motions for reconsideration purely for preserving issues. Under the Board's theory, there would never be a final order under the National Labor Relations statute, because the Board would change its rationale from what you argued, and then you'd have to go back to preserve it, and you'd have a – you'd have an endless going back and forth, shuttlecock and battered door kind of game where the parties would be discussing the arguments rather than the substantive injury in this case. Now, I commend to this Court's attention and learned exposition on this problem by Judge McGowan in the Local 900 Electrical Workers case, which is cited on page 5 of our reply brief, and here is the essence of this provision. Section 10e, he said, is a notice to the Board provision. It is not a requirement for discussion by the Board. That's essentially what the Labor Board is claiming here, is we didn't have this discussion about why this cumulative remedy rationale is so absurd, and therefore we can't raise it in the court of appeals. Now, I'm going to read. Because this – excuse me. You've got a minute. You want to say a minute? Yes. Thank you. Good morning, Your Honors. May it please the Court. My name is Jeffrey Burrett, and I'm here representing the National Labor Relations Board. Obviously, we have two separate flyers we're talking about. I apologize. Two separate flyers we're talking about here, Your Honors. I will address the first, which we've heard about with the payment of union dues. The statute is quite clear in the National Labor Relations Act, as we've discussed or as has been discussed. Under Section 8b1a, there's an objective standard supplied that provides that whether or not the union – the standard is whether or not the union made statements that would reasonably tend to restrain, coerce, or intimidate employees in the exercise of their rights protected by Section 7 of the Act. Now, the Board clearly found, based on its entire reading of this flyer related to union dues, that there was, in fact, coercion. An underlying – the premise upon which this is based is that this flyer addresses all employees, all of the approximately 1,000 employees in the bargaining unit represented by SEIU-121. This includes the financial core members, as we discussed in our brief, as well as the full voluntary union members. Now, the premise upon which the union bases its argument or largely bases its argument is that this was the intent of the union to have this flyer be directed only to its full voluntary union members and not to the financial core members, but that goes against the well-supported findings of the Board that, in fact, clearly implied in this flyer was the fact that it applied to all of the bargaining unit employees. But the dissenting view in the Board was that it couldn't be coercive if it didn't threaten termination, as I understand it. Where would we go to find the law that says that the majority was right and the minority was wrong? Your Honor, there was – in many of the cases, obviously, they come before the Board because there was a direct threat of discharge. It's the most obvious case that comes under – in this context. However, there are, in fact, some cases that establish otherwise, that a direct threat of discharge is not necessary. In one of those cases that we cited before the Board, there was a situation in which there was a pre-election offer to waive union dues, and there was a finding that this violated 8b1a because of the coercive impact of asking individuals to – or indicating individuals they would not owe certain dues or initiation fees. So there we have a situation where there was not a direct threat of discharge. And I take it your position is that there's no law that says that there must be. That's right. There's no requirement of that. Right. There's also a standard of an implied threat of discharge, which the Board specifically in this case did not make a finding of. They did not find that there was no implied threat of discharge. They found that they did not need to reach that question, because here the clear threat, as Your Honor has indicated, was that there was a threat to collect dues that were not otherwise due, is one of the key aspects of this. What deference do we owe the Board majority in this case? Well, the deference is generally the substantial evidence test, where if there's substantial evidence supporting the decision, then you have to owe the Board majority. Well, but this is really a legal question, isn't it? Well, it is. It is. However, the underlying facts of the case, as found by the Board, are that this flyer contained specific erroneous information as it's applied to financial core members. I don't understand that, but the difference, the argument being made and the difference between the majority and the minority and the dissenting member appears to be that the law does require, whether the law does or does not require a threat of termination. Right. Your Honor. It seems to be a legal question. That is a legal question, Your Honor. So what deference do we owe the majority in saying that there does not have to be a threat of termination? Well, it's the reasonable application of its factual findings to the law. And so there is a limited degree of deference that is due to the Board's finding   of termination. But let me ask you, following up on Judge Schroeder's question, are you arguing that B1A is in some way ambiguous and that we owe Chevron deference to the Board's determination that a threat can be made absent the termination threat? I'm not maintaining that there is an ambiguity with respect to whether there is a specific threat of discharge. There is no – there is certainly not on the face of the statute, and we haven't seen any briefs or, excuse me, any case law cited in any of the briefs that suggest that that's a mandatory requirement. Let me point out that a pre-election waiver of dues can be considered to be a violation of the Section 7 rights, which are guaranteed by 8B1A, to the employees. What's the name of that case? Pardon me, Your Honor. I do have it. It's Building Material and Dump Drivers. I don't have the citation, but it is referenced in the Board's brief. Building Materials? Building Material and Dump Drivers. And Dump Drivers. One other question, counsel, that I'd like you to address. Counsel for the union said that there is an obligation to pay dues so long as one is a member of the union, notwithstanding the fact the union has not delivered a collective bargaining agreement. Yes, Your Honor. Do you agree with that? Yes, Your Honor. There is a general obligation that exists independent of the collective bargaining agreement pursuant to the individual employee's voluntary – certainly it's not a contract – their agreement with the union to remain members in good standing. So when they said you've got to pay us dues and we're going to go after you, they're telling the truth? Well, for that general proposition, I would agree. They say that if you have not resigned from the union, even if there's no collective bargaining agreement, yes, you are obligated to continue to pay dues, or the provisions of the union's constitution and bylaws will kick in, whatever those may be. So why is it coercive when somebody is told you have an obligation to pay, and if you don't pay, we'll enforce your obligation? Why is that coercive? Well, Your Honor, the board did not address that question within the specific confines of the voluntary union members. What the board found was that the flyer would reasonably be read by the nurses, represented by 121, to apply to not only the full voluntary members, but also to the financial core members whose only obligations to pay union dues arise under the union security clause of the collective bargaining agreement. These are the people who are under agency shop rather than union security? Yes, Your Honor, that's right. Now, the language gets a little confusing, obviously, because the collective bargaining agreement states, the union security provision states that all employees are required to remain members in good standing. However, that's kind of a term of art that's been accepted and permitted. However, what that is really referring to is that they must be under the act, at least core financial members. They must pay those agency dues, and if they choose, they can take it a step further and voluntarily become union members. But when the flyer is addressed to, distributed to, and speaks to all of the bargaining unit employees, including the financial core members, that is where you have the clear erroneous findings. Are you going to address the second flyer? I will address the second flyer and just restate the board's position that Ms. Bedurcher failed to preserve the ability to argue or to challenge the board's cumulative findings before this Court. The Tenney bar is quite clear. It's a quite clear jurisdictional bar that they haven't. And there's well-established case law, including a case issued earlier this week by the district. Go back a second and tell me, just what did Ms. Batchelder fail to do and why is she barred from this appeal? Yes, Your Honor. We do not disagree with Ms. Bedurcher, as stated in her brief and today, that at every stage of the proceeding, they maintained that there was a violation of the act in by the union violated the act by distributing the flyer with respect to union dues and distributed the flyer with respect to the California professional strike paper statute. What she failed to do, however, was at any point raise to the board or to challenge the board's finding that the finding of a violation with respect to union dues flyer was cumulative with the other flyer. That's a specific, that's a specific and separate issue than was ever addressed by the board. Now, clearly, she was unable to challenge that until the board made that finding. The board made that finding in its decision in order issued on, I believe it was June 8th of 2010, June 8th of 2010, and she had the opportunity to preserve her objections by, as was discussed earlier, filing a motion for reconsideration. The union had a by the union filed its petition in this court prior to the expiration of those 28 days. Yes, Your Honor. Why did that not excuse her from filing a petition for reconsideration before the board, a motion for reconsideration before the board? Isn't there some authority for the fact that if one party petitions the court of appeals, the board loses jurisdiction over them? No, Your Honor. In fact, the opposite is true by statute. The board retains concurrent or overlapping jurisdiction with the court until such time as the board files the record on review with the court of appeals. This was stated quite nicely in the decision I was about to refer to in New York and Presbyterian Hospital issued by the D.C. Circuit issued earlier this week. We provided that to the court in a 28-day letter. And what that provides is that even if a party, in that specific case, it was a little bit more extreme than here, the board itself filed this application for enforcement, I believe, the very day after the board issued its decision in order. Even though it was the board who did so, the board retained overlapping jurisdiction and the opposing party was afforded the full 28 days in which to file its motion for reconsideration. Scalia. Complaints that were consolidated officially by the board, or did they remain separate? By the board? You had two complaints. Yes. Yes, they were. The charges were consolidated and heard in the same proceeding. They were actually consolidated, just not heard in tandem? I believe so, Your Honor. Yes. And decided in the same decision? And decided in the same decision in order. That's right. So Ms. Bredercher had her 28 days to file the motion for reconsideration. This is far from the type of technical requirement as the charging party, Ms. Bredercher, would have this Court to believe. It's long established that an administrative tribunal is to be given the opportunity to not only review the case before it, but to do so in face of the objections filed by the opposing party. The board was denied that opportunity to do so here. There are many interesting questions that can be raised about what constitutes a cumulative finding. The board never had the opportunity to address those. And so we would submit that it is that she is barred from raising that issue now.  It's been a pleasure. First, I'd like to answer Justice Bee's question to Board counsel on building material on truck drivers. It's at 274 NLRB 603. It's cited in the board's brief. And it's important.    It's a case that's been studied in the past. It's a special circumstance because it's a pre-election period, commonly known as the laboratory conditions period. So the standard is much higher. It's important also to know that this flyer was directed at the whole group, most of whom, the supermajority are all members. The flyer taken in total, as the ALJ decided, who saw the people testify, was an exhortation to maintain your membership with regard to Judge Bee's, Justice Bee's inquiry. Was there a finding to that effect? Yes. With regard to your inquiry as to the union's ability to enforce the collective ‑‑ excuse me, its relationship with the member and get dues, that is discussed. That's conceded. Okay. It's also discussed in the brief I had to find. Yes. Your time has expired. Thank you very much. Thank you. Your Honor, this case is about remedy, and Ms. Badger was denied the remedy on the grounds that this consolidated complaint was cumulative, and it's not under the law, and that's an irrational justification for the Board's decision, as we show in our brief. Counsel, if the Board was wrong in saying the finding of another 8B1A violation would be cumulative and would not materially affect our remedial order, which is what they said and put no to of their decision, and Ms. Badger felt or thought that she ‑‑ her rights were being violated by the second flyer, she had a remedy, which was to request a motion for reconsideration and show why it wasn't cumulative, why the NLRB was wrong on that. She didn't do that. They denied her a substantive right, a right to a remedy on her charge and her complaint. Whatever the Board's rationale is, Your Honor, it's not ‑‑ They made a mistake, and they have a remedy administratively when they make a mistake for a motion for reconsideration. It happens every now and then, you know. They could have said ‑‑ they could have said, well, we're going to dismiss it on the merits, or here's another rationale that wasn't brief.  But why didn't she move to reconsider and say, hey, folks, you made a mistake? Because the substance of this case, her violation of her remedy by this little maneuver of the Board by saying it was cumulative, was the same as if her position had been denied de novo. Thank you. Thank you. I think that's it, isn't it? That's it. Okay. The matters just argued are submitted for decision. That concludes the Court's calendar for this morning. The Court stands ‑‑ yes. The Court stands adjourned.
judges: Schroeder, Ripple (7th Cir.), Bea, Cjj